IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LINDA J. HOWES                        :
                                      :
v.                                    :     Civil Action WMN-04-1083
                                      :
DONALD RUMSFELD, SECRETARY
UNITED STATES DEPARTMENT OF           :
DEFENSE

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment.  Paper No. 43.  The motion is fully briefed.  Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion should be granted.

This action relates to Plaintiff's employment in the Defense Security Service (DSS) of the Department of Defense.[1]  The original complaint in this action included: claims for violation of due process and equal protection; a claim of retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) (Title VII); as well as a request for a declaration that Defendant had violated a 1999 agreement that settled Plaintiff's previous Title VII suit against Defendant.  In a memorandum and order dated December 20, 2004, this Court dismissed all but Plaintiff's retaliation claim.

Plaintiff's retaliation claim arose out of a decision made

---

[1] A more complete recitation of the factual background for this dispute is included in this Court's prior memorandum and will not be repeated here.  See Dec. 20, 2004 Mem., passim.

by her second level supervisor, William Curtis, to relocate her position from Linthicum, Maryland to San Antonio, Texas. Plaintiff alleges that six months prior to making this decision, she overheard Curtis ask DSS's Director of Equal Employment Opportunity (EEO) for a list of all agency employees who had previously filed EEO complaints so that he would be able to rid the agency of these "problem employees." Plaintiff also alleges that when Curtis announced the proposed relocation of Plaintiff's Regional Director position, he made statements to the effect that he knew that Plaintiff would not accept the transfer and he fully anticipated that the relocation order would cause her to resign her employment.[2]

Plaintiff never relocated to Texas, nor has she resigned her employment at DSS. After Curtis extended several times the deadline for Plaintiff to report for duty in San Antonio, Plaintiff's Permanent Change of Station (PCS) orders were issued on March 17, 2004, specifying April 5, 2004, as her reporting date. It was on April 5, 2004, however, that Plaintiff filed the complaint in this action, along with a request for an injunction to halt the transfer. Before the Court could rule on the

---

[2] At the same time that Curtis announced that Plaintiff's position was being relocated to Texas, he also announced that another Regional Director position then held by Richard Fitzgerald, was being relocated to Chicago, Illinois. Fitzgerald had also previously filed an EEO complaint. Plaintiff alleges that Curtis stated that he also did not believe that Fitzgerald would accept the reassignment.

propriety of injunctive relief, the parties reached an agreement whereby Plaintiff could remain at her current duty station pending the resolution of this litigation.

At the time this suit was filed, it was anticipated that Plaintiff's position would soon be transferred out from under DDS and into the United States Office of Personnel Management (OPM). In December 2004, however, Plaintiff was notified that, while the subordinates that worked under her would all be moving over to OPM, Plaintiff's supervisory position would not be transfered. Thus, Plaintiff's Regional Director position at DSS was eliminated for reasons that, undisputedly, have nothing to do with issues raised in this suit.  Plaintiff's PCS orders were rescinded and Plaintiff continued in her same Regional Director position, in Linthicum, until February 2005 when her subordinates were transferred to OPM.

With the elimination of her position, Plaintiff was offered several alternatives, including: early retirement with separation incentive pay; a Workload Manager position at a lower GS-level but with retained pay at her current grade level; or a newly created Regional Clearance Officer position at her current grade and salary.  She chose the latter, was reassigned to that position effective April 3, 2005, and is currently working in that position.

When this Court ruled on Defendant's pre-discovery motion to

3

dismiss, or in the alternative for summary judgment, it accepted as true: (1) that Curtis had declared his intent to get rid of "problem employees" and (2) that he subsequently remarked that he knew that both Plaintiff and Fitzgerald (identified as the only other DSS employee who had filed an EEO complaint) would resign their employment before accepting the transfers.  These alleged statements created sufficient concern that the Court allowed Plaintiff to proceed to take discovery in support of her retaliation claim.  The parties engaged in extensive discovery and Defendant has again moved for summary judgment, raising many of the same issues and arguments.[3]  Upon review of what is now a more complete presentation and record of the relevant events, the Court concludes, as a matter of law, that Plaintiff is unable to establish a cause of action for retaliation.

Whether seeking to establish a retaliation claim by direct evidence, or by indirect evidence under a McDonnell Douglas proof

---

[3] Defendant raises one additional argument which is without merit.  Defendant contends that, even if the proposed transfer could have been considered an adverse employment action, once the PCS orders were rescinded, the proposed transfer could no longer form the basis of a retaliation claim.  Mot. 16-17 (citing, inter alia, Howze v. Virginia Polytechnic, 901 F. Supp. 1091 (W.D. Va. 1995), for the proposition that "[w]here a proposed action is never carried out, the plaintiff cannot establish an adverse action").  It is well established that an employer can "cure" an adverse employment action before that action is the subject of actual litigation.  See Taylor v. Small, 350 F.3d 1286, 1293-94 (D.C. Cir. 2003) (collecting cases).  Once a suit encompassing a valid retaliation claim is filed in the district court, however, the employer cannot completely avoid liability simply by rescinding the action.

4

scheme, a plaintiff must, in either instance, demonstrate that she suffered some "adverse employment action." See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006) (direct evidence must both clearly indicate a discriminatory attitude and illustrate a nexus with an adverse employment action); Baqir v. Principi 434 F.3d 733, 747 (4th Cir. 2006) (under the McDonnell Douglas burden shifting scheme, plaintiff has the initial burden to show that he engaged in a protected activity, that the employer took an adverse action against him, and that a causal relationship existed between his protected activity and the employer's adverse action). In the Fourth Circuit, for discriminatory conduct to rise to the level of an adverse employment action, it must "adversely affect[] the terms, conditions, or benefits of her employment." Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotations omitted). While conduct short of an "ultimate employment decision" can constitute an adverse employment action, id., the typical requirements for a showing of an adverse employment action are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999). For a reassignment or transfer to form the basis of a valid Title VII claim, plaintiff must show that it had "some significant detrimental effect" on her. Id. at 256.

It is undisputed that, had Plaintiff relocated to San Antonio, nothing about her job would have changed, except the

location.  She would have remained the Regional Director of the Southern Division, would have supervised the same employees, and would have retained the same job title, grade, basic pay,[4] and benefits.  The anticipated detrimental effects cited by Plaintiff all relate to her personal life: difficulties related to her children's schooling, her husband's profession, and her elderly mother's care.  In her deposition, Plaintiff also cites actual harm to her marriage which she asserts was caused by tensions related to the possible move.  Pl.'s Dep. 133-37.

This Court is not aware of any decision from the Fourth Circuit specifically examining whether this type of harm brought about by a purely lateral geographic transfer can give rise to a Title VII claim.  A decision issued a few weeks ago by the Sixth Circuit, however, Momah v. Dominquez, No. 03-2561, 2006 WL 678963 (6th Cir. March 15, 2006), provides a helpful overview of the relevant principles and authorities.[5]  In Momah, the plaintiff, a

---

[4] Although Plaintiff does not advance this argument in her opposition to the instant motion, she mentions in her affidavit that the move to San Antonio would result in a slight reduction in pay because of federal locality pay differentials.  Pl.'s Aff. dated Aug. 12, 2004, at 8.  Because federal locality pay is premised on differences in the cost of living in different geographic areas, Plaintiffs would suffer no detrimental effect as any pay reduction would be offset by lower living expenses.  Again, Plaintiff makes no argument to the contrary.

[5] Obviously, this Court is not bound by an unreported decision from outside this circuit.  The Court, however, finds the authority cited therein to be highly persuasive and fully consistent with the Fourth Circuit authority cited above.  The Sixth Circuit, in fact, cites Boone v. Goldin as supporting authority for its holding.  Id. at *8.

black Nigerian national, was denied a requested transfer from Memphis, Tennessee, where he had recently moved, back to Detroit, Michigan, where his wife and daughter had remained.  After the plaintiff was attacked by a white supremacist at a gas station in Memphis, his wife was traumatized and became unwilling to relocate to the South.  In addition, his daughter was diagnosed with scoliosis, which required treatment by specialists in Detroit and Chicago.  While he presented no evidence that he suffered a loss of pay, benefits, or title, or change in job responsibilities as a result of the denial of his request to be transfered back to Detroit, he argued that "the denial was adverse because it denied him the opportunity to be closer to his family."  Id. at *8.

Applying a definition of "adverse employment action" very similar to that applied by the Fourth Circuit, the Momah court opined that "[u]nder this definition, it would appear that a purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action."  Id.  The court then elaborated:

> [The Plaintiff's] argument raises the issue of whether the adversity of a given employment action should be judged based on an objective or subjective standard.  We have previously held that an employee's subjective impressions as to the desirability of one position over another are not relevant in determining whether the employee suffered an adverse employment action.  Instead, we employ an objective test that considers whether the employment action at issue was "objectively intolerable to a reasonable

7

> person." Our circuit's focus on objective indicia of adversity is consistent with the holdings of our sister circuits that an employee's subjective preference for one position over another is insufficient to render the denial of a purely lateral transfer an adverse employment action under Title VII. See, e.g., O'Neal [v. City of Chicago], 392 F.3d [909,] 913 [(7th Cir. 2004)] (holding that a "purely subjective preference for one position over another" does not "justify trundling out the heavy artillery of federal antidiscrimination law" in a Title VII claim for the denial of a lateral transfer where "the two jobs were equivalent other than in idiosyncratic terms"); Williams [v. R.H. Donnelley, Corp.], 368 F.3d [123,] 128 [(2nd Cir. 2004)] (rejecting employee's denial of transfer claim on grounds that employee's desire to return to Las Vegas where she still maintained a home was merely a "subjective, personal disappointment" insufficient to "meet the objective indicia of an adverse employment action"); Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532-33 n. 6 (10th Cir. 1998) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action").

Momah, 2006 WL 678963 at *8 (some internal quotations and citations omitted); accord, Odom v. Potter, No. 3:03-913-22BC, 2004 WL 3749041, *4 (D.S.C. Dec. 17, 2004) (holding that when determining whether plaintiff has suffered an adverse employee action, "[a]n objective test of 'adversity' applies," citing Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988)).

Plaintiff's purely personal and subjective reasons for desiring not to relocate to Texas do not support a finding that

her proposed transfer would have been an adverse employment action.[6]

As this Court intimated in its previous opinion, a "constructive discharge" can constitute an adverse employment action.[7] Dec. 20, 2004 Mem. at 11; see also Munday v. Waste Management of N. Amer., Inc., 126 F.3d 239, 243 (4th Cir. 1997). "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job. Thus, a plaintiff alleging constructive discharge must ... prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." Mundy, 126 F.3d at 244. Furthermore,

---

[6] In her opposition to the current motion, Plaintiff appears to argue that her placement in her current job assignment represents an adverse employment action. She claims that while she is still being paid at the same GS-15 level as she was in her former position, she is now performing "low level, GS-7 or GS-9, non-supervisory work" that will not enhance her opportunities for advancement. Opp. 15. Obviously, the Complaint does not identify this as a retaliatory adverse employment action as this assignment was made after this suit was filed.

Where a plaintiff can establish that a change in job assignment is stifling her advancement, that change could constitute an adverse employment action. Von Gunten, 243 F.3d at 868. Plaintiff, however, has offered no evidence, direct or indirect, that this assignment was retaliatory. As noted above, Plaintiff's former position was eliminated because of the transfer of certain functions from DSS to OPM. The only information before the Court as to how Plaintiff was placed in her current position is that she selected it from the same options that were offered to 13 other DSS employees whose positions were not transferred to OPM. See Def.'s Ex. 23.

[7] This theory, of course, assumes that Plaintiff would have resigned her position had the relocation order not been stayed by the filing of this suit and subsequent agreement of the parties.

the intolerability of working conditions, like the adversity of an employment action, is assessed by the objective standard.  Id.

Here, Plaintiff can establish neither element.  Her subjective reasons for not wanting to move to Texas cannot make that move objectively intolerable.  Furthermore, it is doubtful that Plaintiff can establish that Curtis was deliberately attempting to get her to resign.  The Court notes that in October 2003, Plaintiff was offered, with Curtis's approval, the Regional Director position for the Capital Region.  This position would have permitted Plaintiff to retain the same grade, title, and job duties, and not uproot her family.  Curtis's concurrence in offering this position to Plaintiff is wholly inconsistent with any alleged plan to force her to resign.

For all of the above stated reasons, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's retaliation claim.  A separate order consistent with this Memorandum will issue.

　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　William M. Nickerson
　　　　　　　　　　　　　　　　　Senior United States District Judge

Dated: April 6, 2006